181 P.3d 489

Melissa Hei, a single person, Plaintiff–Appellant–Cross Respondent,

and

Michael HEI and Colleen Hei, husband and wife, Plaintiffs,

v.

Mark HOLZER and Lisa Holzer, husband and wife; Joint School District No. 391, a political subdivision of the State of Idaho; John Does 1–5, in their capacity as Board Members of Joint School District NO. 391, Defendants,

and

Joint School District No. 391; a Political Subdivision of the State of Idaho; Larry L. Curry, in his capacity as Superintendent of Joint School District No. 391; Larry Wier, in his capacity as Principal of Kellogg High School, Defendants–Respondents–Cross Appellants.

No. 32211.

Supreme Court of Idaho, Boise, March 2008 Term.

April 2, 2008.

Paul W. Daugharty, Coeur D'Alene, for appellant.

Anderson, Julian & Hull, LLP, Boise, for respondent. Brian K. Julian argued.

J. JONES, Justice.

When Melissa Hei was an eighteen-year-old junior in high school, she engaged in a consensual sexual relationship with Mark Holzer, her teacher and basketball coach. A year after the relationship ended, Hei and her parents sued Holzer and his wife, along with the principal of her high school, the school district, and its superintendent. The trial court entered summary judgment against Hei on all claims. She appealed to this Court, which affirmed the district court's order with the exception of two claims against the school district—a Title IX claim and a negligent supervision claim. On remand, a jury found the school district liable for negligent supervision, but awarded Hei zero damages. The trial court denied all of Hei's post-trial motions seeking alteration of the damage award. She appealed to this Court. We affirm.

### I.

In 1997, Melissa Hei and her parents filed a complaint against Joint School District No. 391 ("School District"), its superintendent, the principal of Kellogg High School, a Kellogg High School teacher named Mark Holzer and Holzer's wife, Lisa. The complaint sought damages for a consensual sexual relationship between Hei and Holzer that occurred while she was a high school student. When it began, Hei was a junior and Holzer was her physical education teacher and bas-

ketball coach. Holzer and his wife, who was also one of Hei's coaches, were also close family friends of Hei and her parents. Hei and Holzer started flirting in the fall of Hei's junior year. Hei turned 18 in December of that year, and a sexual relationship began developing in January. They did not have intercourse until March. Hei confessed her feelings for Holzer to another teacher in January. The teacher reported the conversation to the school activities director, who in turn told the principal and superintendent in February. An investigation commenced in February, but both Hei and Holzer denied any impropriety. In May, Hei told a teaching assistant the truth about her relationship with Holzer. The assistant reported the information to the activities director, who conveyed the information to the principal and superintendent. The teaching assistant discovered that Hei and Holzer had intercourse in June and also relayed that information. Holzer resigned the next day.

More than a year later, Hei and her parents commenced this action. The complaint alleged seventeen causes of action, all based on the sexual relationship. The trial court granted summary judgment on all seventeen claims. Hei appealed to this Court, and the Court vacated and remanded two of the claims—negligent supervision by the School District and a Title IX claim against the School District. *See Hei v. Holzer,* 139 Idaho 81, 73 P.3d 94 (2003).

In a jury trial in 2005, Hei testified about her relationship with Holzer. She testified that she cried a lot, missed classes, and distanced herself from her friends in the year after the relationship. However, she admitted on cross-examination that she did well academically in her senior year of high school. Hei testified to visiting numerous therapists over the years. She also said she felt a lot of guilt for not telling her parents and Holzer's wife, a close friend and mentor, about the relationship.

Hei presented the testimony of her personal physician, Dr. Daugharty, an internist, who opined that Hei suffered post-traumatic stress disorder (PTSD) from the experience with Holzer. Hei also presented the testimony of a clinical psychologist, Daniel Hayes.

Dr. Hayes, who treated Hei for several years, disagreed with Dr. Daugharty's diagnosis of PTSD, positing that Hei exhibited symptoms of anxiety and depression. Hei presented no other evidence of the damages she suffered as a result of the relationship with Holzer. She offered no medical records, estimation of costs, or actuarial statistics on her damages. The defense presented testimony of a clinical psychologist named Alan Bostwick, who evaluated Hei twice. Dr. Bostwick expressed his opinion that the "lawsuit in general was the significant triggering event for her emotional problems."

The jury returned a special verdict, finding against the School District on the negligent supervision claim and that its conduct was a proximate cause of damages to Hei. However, the jury awarded no damages.

Hei filed a motion for a new trial pursuant to IRCP 59(a), an alternative motion for additur pursuant to IRCP 59.1, a motion for increase of award pursuant to I.C. § 6–807, and a motion for judgment notwithstanding the verdict pursuant to IRCP 50(b). The trial court denied all motions, and Hei appealed to this Court.

## II.

This case presents the question of whether a jury must award damages when it finds a defendant liable for negligent conduct. Because a reasonable jury could have concluded from the record that Hei had failed to prove her damages, we affirm.

## A.

The jury's verdict on factual issues will generally not be disturbed on appeal. *McKim v. Horner,* 143 Idaho 568, 572, 149 P.3d 843, 847 (2006). This Court will review a jury's factual determination only in exceptional circumstances.

It is axiomatic that a factual determination made by a jury will not be overturned if it is sustained by the evidence. This is particularly true in tort actions where the damages cannot be ascertained with mathematical precision. Hence, where such injuries are subjective and measurable with only an approximation of certainty, their

award is primarily a question for the jury and an appellate court should interfere with such a verdict only in the most exceptional circumstances. *Bentzinger v. McMurtrey,* 100 Idaho 273, 274, 596 P.2d 785, 786 (1979). "[W]hen reviewing a jury verdict on appeal the evidence adduced at trial is construed in a light most favorable to the party who prevailed at trial . . . ." *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.,* 112 Idaho 722, 726, 735 P.2d 1033, 1037 (1987).

### B.

■ Hei claims the jury erred by failing to award her monetary compensation after it found the School District liable for negligent supervision and a proximate cause of her damages. Hei argues that her case presents exceptional circumstances that would allow this Court to review the jury findings as a matter of law. However, she offers no legal support for her argument, but instead discusses the testimony she offered at trial.

One of Hei's experts was Dr. Barbara Daugharty, Hei's internist and, incidentally, sister of Hei's attorney. Dr. Daugharty testified she thought Hei "didn't meet full criteria for Post–Traumatic Stress Disorder," but that Hei exhibited enough symptoms to allow Dr. Daugharty to treat her as such anyway. The doctor testified that people suffering from PTSD tend to have long-term problems with their health and in their relationships with work, school, and other people.

Daniel Hayes, Ph.D., also testified as an expert for Hei. Hayes is a clinical psychologist who treated Hei on and off for several years. Hayes disagreed with Dr. Daugharty's diagnosis of PTSD. He thought her behavior indicated a general anxiety disorder, coupled with panic, eating disorder behavior, and avoidant/dependent characteristics, though he stated he could understand why Dr. Daugharty diagnosed Hei with PTSD. During Hayes' treatment of Hei, he encouraged her to "move on" from issues he felt were holding her back, including the litigation. However, the litigation was a main theme of their treatment. Hayes testified that Hei felt "her life was on hold" until she could get closure through the lawsuit.

The School District offered the testimony of Alan Bostwick, Ph.D., also a clinical psychologist. Dr. Bostwick saw Hei twice to evaluate her for this litigation. Dr. Bostwick opined that the lawsuit itself was the source of Hei's problems, not her relationship with Holzer. He also stated Hei had no significant psychological difficulties until after the lawsuit was filed. He testified that Hei's symptoms generally increased when she dealt directly with the lawsuit, so that the lawsuit was the "significant triggering event" for her emotional problems. Further, he stated that litigation "retards recovery because it keeps focusing the individual on experiences, memories, trauma." Dr. Bostwick did not think Hei had PTSD; instead, he diagnosed her with low-level chronic depression, some hypochondria, and some passive/aggressive, low self-esteem behaviors. Dr. Bostwick testified that a person's personality traits are well established by age eighteen, and Hei's personality traits of insecurity, inadequacy, obsessive worry, and tendency to overreact were "well formed" by late adolescence.

Dr. Bostwick stated Hei's primary experience was one of "feeling guilty that she didn't disclose the relationship to her parents." He then noted that Hei's family pushed her into filing the lawsuit, and that she went along with her family's wishes in order to avoid conflict or alienation from her family. Finally, he stated Hei "had to behave in a way that was consistent with getting what she was needing from her family and people that were close to her." In sum, Bostwick concluded from his sessions with Hei that the litigation, and not the relationship with Holzer, was the root of Hei's problems.

■ Hei offered no evidence of her damages at trial aside from the testimony of her experts. During the hearing on Hei's post-trial motions, the trial judge repeatedly noted that he was "still struggling with what was actually proven by way of damages." The plaintiff, of course, has the burden to prove all elements of her negligence claim, including damages. The issue of damages is a factual question. *Hanks v. Sawtelle Rentals, Inc.,* 133 Idaho 199, 204, 984 P.2d 122,

127 (1999). Weighing the evidence is within the province of the jury. *McKim,* 143 Idaho at 572, 149 P.3d at 847. In *McKim,* this Court upheld a jury verdict finding against the plaintiff. The plaintiff presented the testimony of at least two doctors that her injuries were the result of the defendant's negligence. The plaintiff argued that her doctors' testimony should have been conclusive evidence. However, this Court observed that the trial court noted the plaintiff "took anti-inflammatory mediation before the accident, presented little evidence on damages, and did not indicate her neck injury limited her." *Id.* Thus, the jury was entitled to reach a conclusion different from McKim's doctors. The Court upheld the jury's decision, stating it was supported by substantial and competent evidence. *Id.*

In her briefing to this Court, Hei offered no legal support for her claims, instead stating the jury failed to follow the instructions given by the trial court or was somehow confused. The instruction regarding damages stated that, if the jury found for Hei on the question of negligent supervision, the jury was to fix the amount of money which would reasonably and fairly compensate her. It also stated, "Whether any of these elements of damage has been proved by the evidence is for you to decide." Thus, it was within the province of Hei's jury to determine whether the evidence established that she suffered damages as a result of the School District's negligent supervision, and if so, in what amount.

This Court will not disturb factual findings that are supported by substantial and competent evidence. It is possible that the jury found Hei suffered special damages but that she failed to establish an amount. Hei offered no evidence of her past medical, counseling, or therapy costs. She offered no

evidence of economic loss as a result of the negligent supervision, whether from lost earnings or for additional costs or services she might have incurred. Hei presented conflicting testimony from her own experts as to what sort of psychological trauma she suffered. The School District presented expert testimony that Hei's psychological difficulties were rooted in the litigation itself, not her relationship with Holzer or the negligent supervision of the school. Thus, the jury's determination that Hei suffered zero damages was supported by substantial and competent evidence. As such, this Court cannot find any "extraordinary circumstance" that would warrant invading the province of the jury.

### C.

Hei filed several post-trial motions, all of which the trial court denied. We affirm.

### i.

■ Hei first argues the trial court should have altered the damages awarded by the jury pursuant to I.C. § 6–807(1). I.C. § 6–807 allows the trial court, in its discretion, to alter an award of damages if the amount awarded is unsupported or unjustified by the clear weight of evidence, is unreasonably disproportionate to the loss suffered, is the product of legal error or mistake, or is likely to have been the product of passion or prejudice by the jury. *Id.* In support of this motion, Hei reiterates her argument that the jury's award of zero damages was in error.

The trial court questioned whether I.C. § 6–807 applied since the jury awarded no damages. The court observed that the statute applies in civil actions "in which there has been an award of damages."[1] The court's point is well taken, as there was no award of

---

1. The section applies, more specifically, to "all civil actions in which there has been an award of damages as herein defined." I.C. § 6–807(1). However, the section itself does not contain a definition of either "award of damages" or "damages." Judging from the context of the section, "as herein defined" more likely applies to "damages" than to "award of damages." The section is contained in chapter 8 of Title 6, which applies to actions for negligence. The section was enacted in 1987 as part of a comprehensive bill "relating to tort liability laws." 1987 Idaho Sess. Laws, ch. 278, pp. 571, 579. Section 1 of that bill, now I.C. § 6–1601, contains definitions of economic damages, future damages, noneconomic damages, property damage, and punitive damages, all of which related to tort actions for personal injury and property damage. Although the issue is not before us at time for decision, it appears that I.C. § 6–807 was intended by the Legislature to apply in the tort arena.

damages but, rather, a determination that no damages were awardable. Nevertheless, the trial court proceeded with consideration of the factors set out in the statute.

■ This Court has not addressed I.C. § 6–807 before. However, I.C. § 6–807 is expressly committed to the trial court's discretion, so this Court must conduct its review on that basis. When reviewing the trial court's exercise of discretion, our inquiry is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Ramos v. Dixon,* 144 Idaho 32, 35, 156 P.3d 533, 536 (2007). In reviewing the record, it appears as though the trial court correctly perceived its role and properly denied Hei's motion.

The trial court explicitly noted its discretionary role in ruling on this motion. It went through the factors in I.C. § 6–807(1) and found that none of the factors merited an increase for Hei. The court mentioned its struggle on the issue of damages, particularly Hei's failure to put on any proof regarding special damages and the conflicting evidence regarding the proximate cause of her emotional problems. The trial judge stated he could understand how the evidence could have produced the damage verdict. The court acted within its discretion under I.C. § 6–807(1) and reached its decision by an exercise of reason.

ii.

■ Hei moved for a new trial under Idaho R. Civ. P. 59(a), asserting the jury's award of $0 was grossly inadequate. Idaho R. Civ. P. 59(a) provides that a new trial can be granted on all or part of the issues in an action on seven different bases. Hei contends the final three bases would afford her relief:

(5) Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice.

(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

(7) Error in law, occurring at the trial.

Idaho R. Civ. P. 59(a).

■ This Court will not overrule the trial court concerning a request for an additur or a new trial pursuant to Idaho R. Civ. P. 59(a)(5) or a request for a new trial pursuant to Idaho R. Civ. P. 59(a)(6) where the trial court did not abuse its discretion, and where the trial court stated the reasons for its ruling with sufficient particularity. *Tuttle v. Wayment Farms, Inc.* 131 Idaho 105, 107, 952 P.2d 1241, 1243 (1998). The standard of review for an abuse of discretion is noted above.

■ To uphold a ruling under Idaho R. Civ. P. 59(a)(5), it must be evident that the trial court (1) contemplated what it would have awarded if it had been the finder of fact and (2) determined that any difference between the jury award and what the trial court would have awarded is not so great as to show a verdict based on prejudice or passion. *Tuttle,* 131 Idaho at 107, 952 P.2d at 1243. To uphold a ruling under Idaho R. Civ. P. 59(a)(6), it must be evident that the trial court weighed the evidence and determined that the verdict was supported by that evidence. *Id.*

The trial court acted within its discretion in considering and deciding Hei's post-trial motions. The trial court articulated its reasons for denying the motion on the record. The judge stated that he was troubled at the time of trial by the fact that Hei presented no proof of any special damages. Further, he stated that numerous things were presented during the course of litigation that could have been the proximate cause of Hei's emotional problems, other than the negligent supervision of the school district. In regard to Hei's motion for a new trial under Idaho R. Civ. P. 59(a), or the alternative motion for additur under Idaho R. Civ. P. 59.1, the judge stated that he could not find that the jury gave its verdict under the influence of passion or prejudice. He then addressed the standard under Idaho R. Civ. P. 59(a)(6) and found that the evidence was sufficient to

justify the verdict. Finally, he stated he could find no errors of law at trial justifying a new trial under Idaho R. Civ. P. 59(a)(7). Thus, the trial court acted within its discretion in denying Hei's Idaho R. Civ. P. 59(a) and Idaho R. Civ. P. 59.1 motions and supported its denials with sufficient particularity.

### iii.

Hei offered a two sentence argument for her motion for JNOV. "The record establishes a basis for Hei's request pursuant to I.R.C.P. 50(b). Simply put, the District Court erred when it determined no basis under I.R.C.P. 50(b) existed."

▮▮▮ The appellate court applies the same standard as the trial court in determining whether a motion for judgment notwithstanding the verdict should have been granted. *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). The issue to be resolved is whether substantial evidence supports the jury's verdict. *Quick,* 111 Idaho at 763, 727 P.2d at 1191. Upon making such a motion, the moving party admits the truth of all adverse evidence. *Highland Enter., Inc. v. Barker,* 133 Idaho 330, 337, 986 P.2d 996, 1003 (1999). All inferences that can be drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Id.* The motion should be granted only where reasonable minds could have reached but one conclusion as to the verdict, and such conclusion does not conform to the jury verdict. *Id.*

The trial court discussed at some length its reasoning for denying this motion. As discussed above, the trial court questioned whether Hei presented any evidence of the damage she suffered as a result of the School District's negligence and concluded that substantial, competent evidence supported the jury's verdict. This Court must apply the same standard as the trial court. As discussed in Section II(B), *supra,* it appears from the record that the jury did not err when it awarded Hei zero damages. She failed to prove any damages resulting from the School District's negligent supervision, and as such, the trial court properly denied the motion for JNOV.

### III

Although this case presents the unusual situation of a negligence finding with no damage award, this Court finds no ground for reversal. Hei failed to provide sufficient proof of damages at trial and fails to present a sufficient reason to overturn or modify the jury's verdict. We affirm and award costs to the School District.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON concur.

