# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34825

REBECCA CRAMER, individually and as surviving spouse of CURT E. CRAMER, )

Plaintiff-Appellant, )

v. )

CRISTIN SLATER, M.D.; IDAHO CENTER FOR REPRODUCTIVE MEDICINE, PC, an Idaho corporation; and K.C. CROWLEY, R.N., )

Defendants-Respondents, )

and )

RUSSELL FOULK, M.D., JOEL SWANSON, M.D., INTERPATH LABORATORY, INC., )

Defendants. )

Boise, January 2009 Term

2009 Opinion No. 38

Filed: March 5, 2009

Stephen W. Kenyon, Clerk

Appeal from the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

The district court's grant of summary judgment in favor of ICRM, Dr. Slater and Nurse Crowley is <u>reversed.</u> The district court's denial of appellant's motion for a new trial is <u>reversed.</u> Judgment is <u>vacated.</u> This case is <u>remanded</u> for a new trial consistent with this Opinion.

David E. Comstock and Byron V. Foster, Boise, for appellant. David Comstock argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for respondent. Joseph D. McCollum, Jr. argued.

_____

W. JONES, Justice

This appeal arises from an action filed by Rebecca Cramer (Rebecca) against Cristin Slater, M.D., Idaho Center for Reproductive Medicine, PC (ICRM), K.C. Crowley, R.N., Russell Foulk, M.D., Joel Swanson, M.D., Associated Regional and University Pathologists Laboratories

1

(ARUP), and Interpath Laboratory, Inc. (Interpath) for the wrongful death of her husband, Curt Cramer (Curt), and the negligent infliction of severe mental and emotional distress.

## FACTUAL AND PROCEDURAL BACKGROUND

In March of 2003, Rebecca and Curt employed Dr. Slater, Nurse Crowley and ICRM for the purpose of *in vitro* fertilization. Prior to the procedure, Curt tested positive for the Human Immunodeficiency Virus (HIV). Curt and Rebecca were both informed that they were HIV negative despite the fact that Curt tested positive for HIV. The Cramers proceeded with the *in vitro* fertilization process, which ultimately failed. In March of 2004, Curt underwent a blood test in conjunction with obtaining a life insurance policy. The life insurance company informed Curt that he would need to see his regular physician for the results, and on April 12, 2004 Curt was informed by Dr. Swanson that he had tested HIV positive. Curt underwent a second HIV test at this appointment and was informed that negative test results are returned within a couple of days, but that positive test results would take longer to report. On April 15, 2004 Curt called Dr. Swanson regarding the second HIV test. At that point in time Dr. Swanson's office did not have a test result. Dr. Swanson's office has no record of the call; however, Curt's cellular telephone records indicate that a call was made. After the call, Curt failed to return to his home or to work. On April 17, 2004, Curt's body was found at the base of a cliff in Owyhee County. The cause of death was massive body trauma and the coroner's office classified it as a suicide. The classification of Curt's death was contested at trial, but the jury ultimately determined that Curt committed suicide.

The district court granted summary judgment and dismissed the wrongful death claim against ICRM and Interpath. Dr. Foulk, ARUP, and Interpath were dismissed pursuant to a stipulation by the parties. The case proceeded to trial on the claim of negligent infliction of emotional distress asserted against Dr. Swanson, Dr. Slater, Nurse Crowley, and ICRM and on the allegation of wrongful death asserted against Dr. Swanson. The jury returned a verdict in favor of Rebecca on the claim of negligent infliction of emotional distress. The jury awarded $27,000 in economic damages and no non-economic damages. Rebecca appeals to this Court. Respondents request attorney's fees on appeal.

## ISSUES ON APPEAL

The following issues are presented to this Court on appeal:

1. Whether the district court erred by granting summary judgment in favor of ICRM on Rebecca's wrongful death claim.

2. Whether the district court erred by admitting evidence of Curt's autopsy which showed the presence of amphetamines.

3. Whether the district court erred by denying Rebecca's motion for a new trial.

4. Whether the district court erred when it denied Rebecca's motion for costs pursuant to I.R.C.P. 54(d)(1)(C) and 54(d)(1)(D).

5. Whether Respondents are entitled to attorney's fees on appeal pursuant to I.C. §§ 12-121, -120(3).

## STANDARD OF REVIEW

This Court engages the same standard as the district court in evaluating an appeal from an order granting summary judgment. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). "Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the nonmoving party, demonstrate no material issue of fact such that the moving party is entitled to a judgment as a matter of law." *Id.* (citing I.R.C.P. 56(c)). "The burden of proving the absence of material facts is upon the moving party." *Id.* "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Mackay v. Four Rivers Packing C*o., 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). If reasonable people might reach a different conclusion from conflicting inferences based on the evidence then the motion must be denied. *Id.* "If the evidence is conflicting on material issues or supports conflicting inferences, or if reasonable minds could reach differing conclusions, summary judgment must be denied." *Doe v. Sisters of the Holy Cross*, 126 Idaho 1036, 1039, 895 P.2d 1229, 1232 (Ct. App. 1995).

This Court reviews evidentiary rulings from the trial court for an abuse of discretion. *Burgess v. Salmon River Canal Co., Ltd*., 127 Idaho 565, 574, 903 P.2d 730, 739 (1995). The trial court has the broad discretion to award costs and to grant or deny a motion for new trial. I.R.C.P. 54(d)(1)(B); *Crowley v. Critchfield*, 145 Idaho 509, 512, 181 P.3d 435, 438 (2007). When this Court examines a trial court's discretionary decision, it must be determined, "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards

applicable . . . ; and (3) whether the trial court reached its decision by an exercise of reason." *Burgess*, 127 Idaho at 573, 903 P.2d at 738.

"A cause of action for negligence includes proof of: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 399, 987 P.2d 300, 311 (1999).

## ANALYSIS

**The district court erred by granting summary judgment in favor of ICRM on Rebecca's wrongful death claim.**

ICRM filed for summary judgment on various grounds, including that ICRM did not proximately cause Curt's death.[1] Rebecca opposed the motion asserting that had Dr. Slater properly informed Curt of his HIV positive status Curt would have received the proper medical and psychiatric care and would not have been subjected to the subsequent medical negligence of Dr. Swanson. The district court granted Rebecca's motion for summary judgment finding that ICRM had a duty to accurately report Curt's HIV positive status and that ICRM breached that duty. The district court found that genuine issues of material fact existed as to whether ICRM was the actual cause of Curt's death.[2] The district court held that no genuine issue of material fact existed as to whether ICRM was the proximate cause of Curt's death and granted summary judgment in favor of ICRM on the wrongful death claim. The district court alternatively held that Curt's suicide was a superseding act which prevents liability for any antecedent negligence committed by ICRM.[3] Rebecca appeals that decision to this Court. The issue of proximate cause and superseding cause will be addressed separately below.

Prior to addressing the district court's grant of summary judgment, this Court will address the application of the Restatement (Second) of Torts § 457 (1965) in light of Idaho's comparative fault statute. In the present case, the district court noted that "as to an injured person, subsequent medical negligence is foreseeable. However, the [c]ourt finds the

---

[1] Not all of the defendants conceded that Curt's death was a suicide, but for purposes of the summary judgment motion, the district court presumed that Curt's death was the result of a suicide.

[2] The district court collectively referred to Nurse Crowley, Dr. Slater and ICRM as "ICRM." This analysis will use the same language for this section only.

[3] It is noted that the district court found that genuine issues of material fact existed as to whether Curt's suicide was a superseding act in regard to Dr. Swanson's alleged negligence.

4

applicability of § 457 questionable in light of Idaho's adoption of comparative fault." This Court has not specifically adopted the Restatement (Second) of Torts § 457 and we now determine that the Restatement (Second) of Torts § 457 and I.C. § 6-801 are not inconsistent and the two rules of law may co-exist in Idaho.

Restatement (Second) of Torts § 457 states that "[i]f the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires." Restatement (Second) of Torts § 457 generally applies to any subsequent medical negligence which is necessary to correct an original act of medical negligence, thereby making acts of subsequent medical negligence generally foreseeable. It is assumed that the district court took issue with the comparative negligence statute, I.C. § 6-801, and the foreseeability of subsequent medical negligence because the Restatement (Second) of Torts § 457 imputes any subsequent liability to the original negligent actor rather than assigning to each actor a percentage of fault as required by the statute. However, because Idaho has adopted comparative fault, the Restatement (Second) of Torts § 457 operates as a general foreseeability rule for any subsequent medical negligence and does not impute liability arising from all subsequent negligent acts onto the original negligent actor. Any liability that is the result of subsequent medical negligence may be reduced by the percentage of fault attributable to each party. This does not affect foreseeability, but rather assigns the jury the task of distributing fault among all liable actors pursuant to I.C. § 6-801.

It must also be determined whether Restatement (Second) of Torts § 457 is applicable in this instance because, as the district court noted, any alleged medical negligence committed by Dr. Swanson did not mitigate any bodily harm caused by ICRM. That is, Curt had no knowledge of his HIV positive status; therefore, he could not seek treatment from Dr. Swanson for any bodily harm caused by ICRM. Other jurisdictions have upheld use of the rule in instances where the injury complained about was the result of the failure to timely or properly diagnose a disease. That is, the rule has been used when the subsequent medical treatment was for a purpose other than the treatment of the physical injury. *Daly v. U.S.*, 946 F.2d 1467 (9th Cir. 1991) (finding progression of the disease was foreseeable from the misdiagnosis despite similar negligent conduct from subsequent doctors); *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980) (finding that subsequent negligent medical advice to obtain an abortion was foreseeable for failing to diagnose

a pregnancy and administrating x-rays thereby exposing the fetus to radiation); *Lindquist v. Dengel*, 595 P.2d 934 (Wa. 1979) (finding that the failure to diagnose tuberculosis could foreseeably lead to the unnecessary, and potentially negligent, removal of part of the lung); *Davidson v. Gaillard*, 584 So.2d 71 (Fla. Dist. Ct. App. 1991) (failure to diagnose reoccurring lymphoma could foreseeably result in subsequent medical negligence and cause the death of the patient); *Amu v. Barnes*, 650 S.E.2d 288 (Ga. Ct. App. 2007) (finding that the failure to diagnose colon cancer from complaints of rectal bleeding could foreseeably lead to progression of the disease despite subsequent medical negligence for failure to administer a colonoscopy); *Walker v. Giles*, 624 S.E.2d 191 (Ga. Ct. App. 2005) (failing to diagnose a pregnant woman's appendicitis could foreseeably lead to further negligent misdiagnosis and treatment which results in miscarriage, stroke and paralysis). Similarly, Rebecca's complaint alleged that the injury, her emotional distress and Curt's suicide, were the result of ICRM's failure to properly and timely diagnose and treat Curt. The district court incorrectly found that the Restatement (Second) of Torts § 457 does not apply in Idaho and does not apply in this case.

Ultimately, the court held that "Curt's suicide and the manner of its occurrence [are] so highly unusual that as a matter of law no reasonable person would expect the suicide to occur as a result of the alleged misconduct of the ICRM Defendants in this case." This Court reverses that decision and finds summary judgment inapplicable in the present case because genuine issues of material fact exist as to whether Curt's death was proximately caused by ICRM's negligence and whether Curt's suicide was a supervening act.

***Genuine issues of material fact exist as to whether Curt's death was proximately caused by ICRM's negligence.***

Proximate cause consists of actual cause and true proximate cause, which is also referred to as legal cause. *Newberry v. Martens*, 142 Idaho 284, 288, 127 P.3d 187, 191 (2005). In other words, proximate cause "is composed of two elements: cause in fact and scope of legal responsibility." *Sisters of the Holy Cross*, 126 Idaho at 1039, 895 P.2d at 1232. "Actual cause is the factual question of whether a particular event produced a particular consequence." *Newberry*, 142 Idaho at 288, 127 P.3d at 191. But true proximate cause focuses on whether legal policy supports responsibility being "extended to the consequences of conduct. . . . [it] determines whether liability for that conduct attaches." *Id.* (internal citations omitted) (quoting *Henderson v. Cominco American, Inc.*, 95 Idaho 690, 695, 518 P.2d 873, 878 (1973)). That is,

6

"whether it was reasonably foreseeable that such harm would flow from the negligent conduct." *Sisters of the Holy Cross*, 126 Idaho at 1040, 895 P.2d at 1233. This Court must decide whether the injury and manner of the occurrence are "so highly unusual that we can say, as a matter of law that a reasonable [person], making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Id.* at 1041, 895 P.2d at 1234 (internal quotations and citations omitted) (quoting *Alegria v. Payonk*, 101 Idaho 617, 619-20, 619 P.2d 135, 137-38 (1980)). The question of proximate cause is one of fact and almost always for the jury. *Id.* at 1041, 895 P.2d at 1234. "[P]roximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable [people] differing, the question is one for the jury." *Id.* (quoting *Alegria*, 101 Idaho at 619-20, 619 P.2d at 137-38).

This Court finds that genuine issues of material fact exist as to whether ICRM's negligence proximately caused Curt's suicide. Rebecca produced affidavits at the summary judgment phase which stated that suicidal ideations are reasonably foreseeable after a person is informed of their HIV positive status. It was this evidence that precluded summary judgment in favor of Dr. Swanson on the issue of whether his alleged negligence proximately caused Curt's death. In accordance with Restatement (Second) of Torts § 457, subsequent medical negligence is generally foreseeable, including instances where the injury complained of stems from an original negligent act failing to properly diagnose and treat. However, the district court's conclusion that no genuine issue of material fact existed was based on Rebecca's failure to produce any testimony as to whether a person would have suicidal ideations by being informed that s/he is HIV negative. Although this analysis is valid, it leaps over a few factual issues which create genuine issues of material fact. Rebecca's primary contention is that by negligently misinforming Curt that he is HIV negative and thereby not providing him with counseling and treatment, ICRM leaves open the possibility that Curt would later be negligently informed of his correct HIV status. Dr. Swanson's subsequent medical negligence[4] is foreseeable in accordance with the Restatement (Second) of Torts § 457. Therefore, this Court cannot say, as a matter of law, that Curt's suicidal ideations were unforeseeable when he was negligently misinformed by

---

[4] It is assumed, for purposes of this analysis at the summary judgment phase, that Dr. Swanson's conduct constituted medical negligence.

ICRM that he was HIV negative and subsequently subjected to the medical negligence of Dr. Swanson.

Further, the district court failed to note the possibility that if a person is informed that s/he is HIV negative and subsequently informed that s/he is HIV positive that the person may conclude that s/he contracted HIV within the interim. The district court's analysis fails to take into account the incurable nature of HIV; an HIV positive person will eventually be informed that s/he is HIV positive. HIV is contracted through the transfer of bodily fluids and most commonly associated with unprotected sexual activity and intravenous drug use. In fact, Dr. Swanson's notes reflect that this information was indeed given to Curt when he was informed of his HIV positive status.

> [I] [d]iscussed with [Curt] [the] risk factors for HIV. He has been married for four years. He strongly states he has had no other sexual encounters following his marriage other than his wife and he feels his wife is the same. *Just six months ago* his wife underwent in vitro fertilization and he stated he underwent an "infectious disease testing" and at that time *[he] was negative*. He denies any other high risk factors including IV drug abuse and any recent blood transfusions are distant. Again, [Curt has engaged in] no sexual improprieties since prior to being married.

(Emphasis added). This information, in and of itself, could reasonably lead a person to believe that the cause of the HIV is sexual impropriety; if Curt knew he had not engaged in any sexual encounters outside of the marriage only one logical conclusion remains. Reasonable minds could differ as to whether ICRM's negligence for the failure to correctly inform Curt that he was HIV positive could lead to his subsequent suicide. If a person is HIV positive s/he will retain that status for the foreseeable future. That is, if a person is negligently misinformed that s/he is HIV negative it is foreseeable that the person will eventually be correctly informed that s/he is HIV positive, so the question becomes whether it is foreseeable that the HIV positive person will have suicidal ideations when s/he is correctly informed and this is precisely the evidence Rebecca produced at the summary judgment phase. Merely analyzing the issue as to whether a person will have suicidal ideation when informed s/he is HIV negative fails to take into account any future conduct of other actors and the fact that the person will eventually be informed s/he is HIV positive.

The district court correctly found that ICRM had a duty to inform Curt of his HIV positive status and that ICRM breached that duty. Further, ICRM negligently failed to

recommend Curt to counseling and treatment for the disease, which would have reduced or eliminated any subsequent negligence by Dr. Swanson. ICRM was in a position to prevent the ultimate result in this case by properly diagnosing and treating Curt; ICRM breached its duty to Curt and should not be relieved of its responsibility for that breach merely because Dr. Swanson subsequently engaged in foreseeable negligent conduct. In accordance with Restatement (Second) of Torts § 457, subsequent medical negligence is generally foreseeable. Although ICRM's potential liability will be reduced by a determination of any comparative negligence of Dr. Swanson pursuant to I.C. § 6-801, the comparative negligence statute does not reduce the foreseeability of Curt's injury; it merely reduces the liability of ICRM if the jury determines that Curt's death was proximately caused by ICRM's breach. Whether ICRM's actions proximately caused Curt's death is a question of fact for the jury. This Court reverses the district court's grant of summary judgment in favor of ICRM and holds that questions of fact exist as to whether ICRM proximately caused Curt's death.

*Genuine issues of material fact exist as to whether Curt's suicide was a superseding act*.

Respondents argue that the district court correctly ruled that Curt's suicide was a superseding event with regard to ICRM's negligence. This Court has adopted the Restatement (Second) of Torts § 440 (1965). *Mico Mobile Sales and Leasing, Inc. v. Skyline Corp*., 97 Idaho 408, 411, 546 P. 2d 54, 57 (1975). "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Id.* at 411-12, 546 P. 2d at 57-58. (quoting *Lundy v. Hazen*, 90 Idaho 323, 329, 411 P.2d 768, 771 (1966)). The following guidelines are used to determine whether an intervening act is a superseding cause:

> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand is or is not a normal result of such a situation;
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.* at 412, 546 P.2d at 58 (quoting Restatement (Second) of Torts, § 442 (1965)).

Both parties cite to *Brooks v. Logan*, for a determination of whether Curt's suicide constitutes a superseding cause. That case stemmed from the suicide of a high school student and a subsequent cause of action filed by the student's parents against the teacher and the school district for their failure to intervene in the student's contemplated suicide. *Brooks v. Logan*, 127 Idaho 484, 486, 903 P.2d 73, 75 (1995). This Court held that the doctrine of superseding cause is "inapplicable to both the wrongful death action[] and the [parents'] cause of action for negligent infliction of emotional distress. . . . [W]e believe the question is more appropriately one of comparative negligence. . . . It is for the jury to compare the negligence of all the actors." *Id.* at 491-92, 903 P.2d at 80-81 (internal citation omitted). The Court cited to Idaho's comparative negligence statute which states that "[c]ontributory negligence or comparative responsibility shall not bar recovery in an action by any person . . . to recover damages . . . resulting in death or injury to [a] person" unless that person's own negligence was greater than the negligence "of the person against whom recovery is sought." I.C. § 6-801. In *Brooks*, this Court ultimately held that the issue of the comparative negligence which resulted in the student's suicide was not a determination to be made on summary judgment. *Brooks*, 127 Idaho at 492, 903 P.2d at 81.

In the present case, the district court found "that when a psychiatrist, psychologist, or doctor fails to properly assess a patient's suicidal ideations and consequently fails to take steps to prevent the suicide, these professionals can be held liable for the patient's suicide." (Citing 81 A.L.R. 5th 167 § 6[a] (2000)). This analysis is supported by the Court's decision in *Brooks*. Curt's suicide is the injury that Rebecca's complaint alleges. Therefore, similar to *Brooks*, questions of fact exist as to whether a duty exists to prevent that injury. It necessarily follows that if a doctor has a duty to accurately assess a patient's suicidal ideations and Rebecca submitted evidence that suicidal ideations are foreseeable if a patient is informed of his/her HIV positive status then the analysis would be one of comparative negligence among all the actors. Again, ICRM failed to follow through with the required treatment of an HIV positive patient which would have eliminated Dr. Swanson's negligence. Similar to the analysis in *Brooks*, this case is more closely akin to a question of comparative negligence as between Curt, Dr. Slater,

10

ICRM, Nurse Crowley, Dr. Foulk, Dr. Swanson, ARUP and Interpath.[5] All the actors contributed to some degree, and the jury is charged with the factual determination of which actors will be held liable. Rebecca is asserting that Curt's suicide was the foreseeable consequence of all the parties' alleged negligence. This issue would have been properly left for the jury. This Court finds summary judgment inappropriate in favor of ICRM.

**The district court did not err by admitting evidence of Curt Cramer's autopsy which showed the presence of amphetamines**.

"Trial courts have broad discretion when ruling on a motion in limine so we review the district court's decision to grant or deny a motion in limine for abuse of discretion." *Puckett v. Verska*, 144 Idaho 161, 167, 158 P.3d 937, 943 (2007). "The Court reviews trial court decisions admitting or excluding evidence . . . under the abuse of discretion standard." *Morris v. Thomson*, 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997). An incorrect ruling only warrants a new trial if the error affected a substantial right of a party. *Id.* (citing I.R.C.P. 61; I.R.E. 103).

Rebecca contends that it was error for the trial court to deny her motion *in limine* to exclude a toxicology report which indicates evidence of amphetamines in Curt's urine. Plaintiff asserts that the report improperly ignited passion and prejudice in the jury because amphetamines and methamphetamines are indistinguishable to lay persons. The trial court allowed the toxicology report to be admitted for the factual purpose of determining Curt's cause of death which was a disputed issue. The court found it relevant to the issue of whether Curt's death was accidental or a suicide.

In the district court's decision the judge recognized the decision as discretionary. The trial court found that the report was relevant because "Curt's mental status and whether or not he was impaired by drugs at the time of his death is directly relevant to establishing other factors that lead to Curt potentially taking his own life or if this was an accidental death." The trial court further noted that Rebecca would be able to present evidence that the toxicology report had no confirmatory test and, therefore, may be inaccurate or questionable. Ultimately, the court found the evidence relevant in light of the circumstances surrounding Curt's death and ruled the toxicology report admissible. In fact, Rebecca presented expert testimony at trial which indicated that amphetamines may be present from the use of prescription and over-the-counter asthma medication and that Curt had taken medicine in conjunction with his asthma. This Court

---

[5] All parties still remained in the action at the summary judgment stage.

11

finds that the trial court did not abuse its discretion in denying the motion *in limine* to exclude the toxicology report. Even assuming that admission of the toxicology report constituted error, any error would have been mitigated by expert testimony, and therefore, would constitute harmless error. *White v. Mock*, 140 Idaho 882, 891, 104 P.3d 356, 365 (2004) ("A judgment may not be disturbed on appeal due to error in an evidentiary ruling unless the error affected the substantial rights of a party.")

**The district court erred by denying Rebecca's motion for a new trial.**

Rebecca argued to the district court that she was entitled to a new trial pursuant to I.R.C.P. 59(a) because of irregularities in the Special Verdict, the jury's failure to award emotional distress damages, and the district court's denial of her motion *in limine*. The issue of irregularities in the jury verdict was properly raised before the jury was discharged. *Crowley*, 145 Idaho at 512, 181 P.3d at 438 (stating that "[t]he time for challenging a verdict as inconsistent is when it is returned.") Rebecca pursues the same arguments on appeal. This Court will not address any alleged error in the denial of the motion *in limine* because it is discussed above. Due to inconsistencies in the verdict form, this Court reverses the district court's denial of Rebecca's motion for a new trial.

"A new trial may be granted to all or any of the parties and on all or part of the issues in an action for . . . [i]rregularities in the proceedings . . . [or] [e]rror in law." I.R.C.P. 59(a)(1), 59(a)(7). This Court reviews the grant or denial of a motion for new trial for an abuse of discretion. *Puckett*, 144 Idaho at 168, 158 P.3d at 944. "[A] jury verdict on issues of negligence and causation will not be disturbed on appeal unless it appears to the reviewing court that the verdict is either not supported by substantial competent evidence or is against the clear weight of the evidence." *Burgess*, 127 Idaho at 570, 903 P.2d at 735. Generally, this Court will not disturb a jury's factual determinations on appeal. *Hei v. Holzer*, 145 Idaho 563, 566, 181 P.3d 489, 492 (2008).

> It is axiomatic that a factual determination made by a jury will not be overturned if it is sustained by the evidence. This is particularly true in tort actions where the damages cannot be ascertained with mathematical precision. Hence, where such injuries are subjective and measurable with only an approximation of certainty, their award is primarily a question for the jury and an appellate court should interfere with such a verdict only in the most exceptional circumstances.

*Id.* at 566-67, 181 P.3d at 492-93 (quoting *Bentzinger v. McMurtrey*, 100 Idaho 273, 274, 596, P.2d 785, 786 (1979)). The plaintiff bears the burden of proving every element in a negligence action, including damages. *Id.* at 567, 181 P.3d at 493. "The issue of damages is a factual question." *Id.*

The Special Verdict form answered the following relevant questions[6]:

(1)   [Proximate cause of Interpath].
(2)   Do you find that K.C. Crowley, R.N. breached the standard of health care practice? [**YES**]
(3)   Do you find that Christin [sic] Slater, M.D. breached the standard of health care practice? [**YES**]
(4)   Do you find that the negligence of ICRM was a proximate cause of the Plaintiff's emotional distress as outlined in Instruction No. 33?[7] [**NO**]
(5)   If you answered some of the questions "Yes", then set forth the percentage of negligence as to any Defendant that you answered "Yes" in Question No. 1 through Question No. 4. If you answered "No" as to a Defendant, leave the percentage (%) blank or place a N/A (Not Applicable) in the blank. Considering all of the negligence which proximately caused the Plaintiff's emotional distress, we find the negligence causing the Plaintiff's emotional distress in the following percentages:
    a.  Defendant Interpath                           N/A%
    b.  Defendant ICRM                              N/A%
    c.  Defendant K.C. Crowley, R.N.            40%
    d.  Defendant Christian [sic] Slater, M.D.   60%
       Total must equal                     100%
(6)   What is the amount of damages sustained by the Plaintiff on her claims as to Interpath, ICRM, Dr. Slater and Nurse Crowley?
    a.  Non-Economic Damages: $0
    b.  Economic Damages: $27,000
(7)   Was Curt Cramer's death a suicide? [**YES**]
(8)   [Negligence of Dr. Swanson for wrongful death claim]
(9)   [Proximate cause of Dr. Swanson for wrongful death claim]
(10)  [Percentage of fault between Dr. Swanson and Curt for wrongful death claim]
(11)  [Damages against Dr. Swanson for wrongful death claim]
(12)  [Negligence and proximate cause of Dr. Swanson for emotional distress claim]
(13)  [Damages against Dr. Swanson for emotional distress claim]
(14)  Was the negligence of ICRM reckless as defined to you in Instruction No. 31? [**YES**]
(15)  [Recklessness of Interpath]
(16)  [Recklessness of Dr. Swanson]
(17)  Was the negligence of the Defendant Dr. Slater reckless as defined to you in Instruction No. 31? [**NO**]

---

[6] Only the alleged inconsistencies from the special verdict form are quoted. However, the subject matter of the omitted questions is mentioned to keep the numbering consistent and for the ease of the reader. Only the questions completely irrelevant to this appeal have been omitted.

[7] The jury instructions do not appear in the record or transcript on appeal.

(18)   Was the negligence of the Defendant Nurse Crowley reckless as defined to you in Instruction No. 31? [**NO**]

Both parties cite to Instructions No. 21 and 22 which appear in the record as an attachment to an affidavit supporting the motion for new trial, however, the jury instructions do not otherwise appear in the record or transcript on appeal.[8] Accordingly, this Court denies review of the instructions as a whole and the issue of whether the jury was properly instructed. Without the jury instructions this Court is unable to make a determination of whether the jury was properly instructed.

The Special Verdict form is unmistakably confusing. The district court found the jury's Special Verdict form was reconcilable. The court rationalized that the jury found Dr. Slater and Nurse Crowley negligent, but did not find ICRM vicariously liable for their negligence. However, according to instruction Nos. 21 and 22 the jury did not have a choice of whether to find ICRM vicariously liable. Respondents argue that the verdict is reconcilable by arguing that the jury found Dr. Slater and Nurse Crowley negligent and ICRM stipulated to their negligence; therefore, the only issue which pertained to ICRM was whether ICRM proximately caused the emotional distress experienced by Rebecca. The jury found that ICRM did not proximately cause Rebecca's injury. However, this fails to take into account any liability of ICRM based on vicarious liability for the negligence of Dr. Slater and Nurse Crowley. In essence, from questions 2, 3 and 5 it can be inferred that the jury found Dr. Slater and Nurse Crowley were negligent and proximately caused the injury. However, they also found that ICRM's negligence did not proximately cause the injury after being instructed that any negligence on the part of Dr. Slater or Nurse Crowley would be imputed to ICRM. This Court may determine that the jury verdict is reconcilable by interpreting the verdict to hold ICRM vicariously liable for Dr. Slater and Nurse Crowley's negligence, but that the jury did not find ICRM's actions in and of themselves were the proximate cause of Rebecca's emotional distress. That is, ICRM is liable for the percentage of fault attributable to each of the actors that it is vicariously liable for, Nurse

---

[8] Instruction No. 21 reads:
> K.C. Crowley, R.N., involved in the care of Curt Cramer was an employee of ICRM at the time of the occurrence. Therefore, you are instructed any act or omission of K.C. Crowley, R.N., in her care of Curt Cramer was the act or omission of Defendant ICRM.

Instruction No. 22 reads:
> Cristin Slater, M.D., who was involved in the care of Curt Cramer was an employee of ICRM at the time of the occurrence. Therefore, you are instructed any act or omission of Cristin Slater, M.D. in her care of Curt Cramer was the act or omission of the Defendant ICRM.

14

Crowley and Dr. Slater, but ICRM does not have any liability for its own individual actions, though that conclusion ignores that ICRM can only act through its employees. This Court finds that the jury's verdict is inconsistent and beyond reasonable reconciliation. The jury contradicts itself throughout the findings. Rebecca properly objected when the verdict was returned and asked the court to have the jury reconcile the verdict. The court declined to do so and this Court cannot reasonably reconcile the verdict. This Court reverses the judgment and grants Rebecca's motion for a new trial.

Rebecca contends that the jury erroneously failed to grant non-economic damages on her claim for emotional distress. She states that her emotional distress was uncontested at trial and reiterates the trauma she experienced as a result of the *in vitro* fertilization procedures and Curt's suicide. The jury's award of only economic damages is curious, troubling and potentially inconsistent. We cannot make a ruling on any matter regarding the jury instructions because the jury instructions are not contained in the record. Although it is permissible for a jury to find that the Plaintiff failed to meet the burden of proving non-economic damages, it is curious how a jury could find negligent infliction of emotional distress and then not compensate Rebecca for any of the emotional distress she suffered. A showing of emotional distress does not necessitate a finding of non-economic damages. As stated in *Hei*, damages in a tort claim cannot be "ascertained with mathematical precision." *Hei*, 145 Idaho at 566-67, 181 P.3d at 492-93 (quoting *Bentzinger*, 100 Idaho at 274, 596, P.2d at 786). However, unlike in *Hei*, Rebecca's emotional distress and any non-economic damages stemming from the emotional distress were uncontested. In *Hei* there was testimony which supported a finding that her emotional distress could have been the result of several other factors. *Id.* at 568, 181 P.3d at 494 (finding one of the factors supporting the jury verdict was that conflicting expert testimony existed to support varying degrees and the root of Hei's psychological trauma).

This Court holds that the inconsistencies in the verdict form and the jury's findings are irreconcilable and the motion for a new trial should have been granted. This Court need not address whether it was error to deny the new trial for any alleged error in admitting the toxicology report because that issue has been previously addressed.

**Whether the district court erred when it denied Rebecca's motion for costs pursuant to I.R.C.P. 54(d)(1)(C) and 54(d)(1)(D).**

15

Rebecca petitioned the court for an award of costs as a matter of right in the amount of $12,505.91 and discretionary costs in the amount of $35,827.34. The trial court awarded $2,445.83 as a matter of right and declined to award discretionary costs.

This Court will not address this issue because the case is remanded for a new trial. Upon retrial it is within the discretion of the district court to determine who the prevailing party is on which claims and whether that party is entitled to costs.

**Respondents are not entitled to attorney's fees on appeal pursuant to I.C. §§ 12-120(3), -121**.

Respondents make a claim for attorney's fees pursuant to I.C. §§ 12-120(3), -121. "I.C. § 12-120(3) . . . allows recovery for attorney fees by the prevailing party in any commercial transaction." *Mackay*, 145 Idaho at 415, 179 P.3d at 1071. A "commercial transaction" is defined as any transaction, except transactions for personal household purposes. I.C. § 12-120(3). I.C. § 12-121 "provides that '[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party. . . .' Such an award is appropriate when this Court has the abiding belief that the appeal was brought or defended frivolously, unreasonably or without foundation." *BHA Investments, Inc. v. State*, 138 Idaho 348, 355, 63 P.3d 474, 481 (2003) (citing I.C. § 12-121).

Respondents are not the prevailing party in this action; therefore, there is no entitlement to attorney's fees under either statute. Moreover, this case does not constitute a commercial transaction; therefore I.C. § 12-120(3) is inapplicable to the present action.

## CONCLUSION

For the foregoing reasons this Court reverses the district court's grant of summary judgment in favor of ICRM, Dr. Slater and Nurse Crowley. Further, this Court reverses the denial of Rebecca's motion for a new trial; the judgment is vacated and this case is remanded for a new trial consistent with this opinion.

Justices BRUDICK, J. JONES, HORTON and Justice Pro Tem KIDWELL, **CONCUR**