861 P.2d 1219

Lacy Ann WARREN, Plaintiff–Respondent,

v.

John FURNISS and Wendy Furniss, individually, and as guardians of Malorie Furniss, a minor child, Defendants–Appellants.

No. 19789.

Court of Appeals of Idaho.

July 9, 1993.

Quane, Smith, Howard & Hull, Boise; Reed McClure, Seattle, WA, for defen-

dants-appellants. Douglas J. Balfour and William R. Hickman argued.

Racine, Olson, Nye, Cooper & Budge; Pocatello, for plaintiff-respondent. Reed W. Larsen argued.

McKEE, Judge, pro tem.

Plaintiff Lacy Warren, a pedestrian, was struck in a controlled intersection by a vehicle driven by defendant Malorie Furniss. The vehicle belonged to the defendants John and Wendy Furniss, Malorie's parents. The facts of the accident were vigorously disputed at trial. Both sides claimed that the other entered the intersection against a red light. For the purposes of analysis here, it appears that the traffic signal may have been in the process of changing at the time of the occurrence. The traffic light for the motorist may have been changing from green to red, cycling through yellow as she approached or entered the intersection. It appears that the light may have been red for the pedestrian when she started to cross, perhaps turning green during her crossing.

The jury found both parties negligent and assigned 65% of the fault to the motorist, and 35% to the pedestrian plaintiff. The jury determined the total damages to be $175,000. Based upon the apportionment of fault, the court entered a judgment in plaintiff's favor and against all defendants for $113,750, which was later amended to add prejudgment interest under I.C. § 12–301 and costs.

The defendants have appealed, raising several issues for review. We have considered the positions urged by the parties with respect to all of those issues, and we conclude that reversible error occurred which requires that this case be remanded for a new trial. In explaining the basis for this conclusion, we deem it necessary to discuss only the issues which caused us to reach this conclusion and those upon which guidance for a new trial would be beneficial. Accordingly, for the reasons stated below, we vacate the judgment and remand this case for a new trial.

## I. Erroneous Instructions

### A. Non–Existent Statute

■ The trial judge instructed the jury that there was a statute in Idaho that required a motorist approaching the yellow light in a changing traffic signal to slow down, stop at the crosswalk or stop line, and yield the right of way to any vehicle or pedestrian in or approaching the intersection. There is no such statute in Idaho. The instruction further stated that if a collision occurred after a driver entered an intersection on the yellow light, the "statute" in Idaho would deem the collision to be prima facie evidence of the driver's failure to yield the right of way. The jury was finally instructed that a violation of this "statute" was negligence. The full instruction, as given to the jury, is as follows:

### Instruction No. 14

There was in force in the state of Idaho at the time of the occurrence in question, a certain statute which provided that: The driver of any vehicle shall obey the instructions of any traffic control device placed or held on any street

The driver of a vehicle approaching a yellow light shall, in obedience to such light, slow down to a reasonable speed for existing conditions and if required for safety to stop, shall stop at a clearly marked stop line or before entering the crosswalk on or near the side of the intersection, or at the point nearest the intersecting highway, where the driver has a view of the approaching traffic on the intersection highway before entering it. After slowing or stopping, the driver shall yield the right-of-way to any vehicle or pedestrian in the intersection or approaching on other highways so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of

the highways. Provided, however, that if a driver is involved in a collision in the intersection or junction of the highways, after driving past the yellow light without stopping, the collision shall be deemed prima facie evidence of his or her failure to yield the right of way.

A violation of this statute is negligence.

With the exception of two critical substitutions, the substance of the instruction is a verbatim recitation of I.C. § 49–807(3), which pertains to stop signs and yield signs. The words "yellow light" were substituted in the instruction for the words "yield sign" as they appear in the statute. However, this statute pertains to yield signs, not steady yellow lights in changing traffic signals. Plaintiff explains that she offered the instruction as an amalgam drafted from I.C. § 49–801 (which requires drivers to obey traffic control signals), I.C. § 49–804 (which provides for the duties and sanctions involved in flashing signals) and I.C. § 49–807 (which provides for the duties and sanctions involved in stop signs and yield signs). The argument is not persuasive. The statutes identified by plaintiff do not connect, and the duties owed when approaching a yield sign or flashing yellow light have nothing to do with the duties owed when approaching a steady yellow light in a changing three-way traffic signal. The only statute bearing upon a steady yellow light in a changing traffic signal is I.C. § 49–802(2), which merely provides that the steady yellow light constitutes a caution message to approaching motorists that the traffic signal is about to turn red.

■■■ The instruction misstates the law in several material respects. While an approaching motorist should exercise caution, there is no obligation for a motorist stop merely upon the appearance of a steady yellow light in a changing traffic signal. The law prohibits entering a controlled intersection against a red light, but there is no statutory prohibition against entering an intersection against a yellow light. If a motorist can safely enter the intersection before the light changes to red, it is not a violation of the law to do so. Since the traffic signal for crossing traffic is still red, a motorist is not required to yield the right-of-way on the appearance of the steady yellow light. For the same reason, it is not prima facie evidence of a failure to yield the right-of-way if a collision occurs in an intersection where the driver has passed a yellow light. To the contrary, if this was the only evidence, it would indicate that the crossing driver or pedestrian wrongfully had entered the intersection against a red light.

The instruction as given was clearly erroneous; consequently, we must vacate the judgment and remand this case for a new trial without the use of the instruction as given.

**B. Equality of Rights Instruction**

■■■ The appellants next contend that instruction number 23 was prejudicial and erroneous. The instruction given to the jury reads as follows:

The court instructs the jury that neither a pedestrian nor an automobile has a superior right to any part of the public roadway. Each with respect to the other in the use of the roadway is entitled to equality of right, the duties of each a reciprocal; however, while the duty of exercising reasonable care for their own safety and the safety of others is imposed alike on both the pedestrian and the driver, the automobile being a dangerous instrumentality, capable of inflicting fatal injuries, the comparative safety of its driver in case of collision with a pedestrian is to be taken into consideration in measuring the duty of a driver. Therefore, while the rights of a pedestrian and driver of an automobile to use a roadway are equal, and their duties to each other are reciprocal, the one having the greater power to do injury owes to the other a comparatively greater duty to exercise care in the use of that power.

The instruction is taken directly from *Jones v. Mikesh*, 60 Idaho 680, at 686, 95 P.2d 575, at 578 (1939). However, the *Mikesh* case was decided at a time when the defense of contributory negligence was a complete bar to a plaintiff's recovery. The concept of comparative negligence came much later. Further, when *Mikesh* was written, instructions containing fine distinctions on the law were accepted practice. Modern thought considers these fine-line distinctions to be unnecessary. The Supreme Court has commented several times in recent years that "in all but the most intricate negligence cases, the general definition of negligence sufficiently outlines the required standard of care." *McPheters v. Peterson*, 108 Idaho 107, 697 P.2d 447 (1985); *see, also Mills v. Hunt Bros. Construction*, 96 Idaho 563, 532 P.2d 568 (1975); *Messmer v. Ker*, 96 Idaho 75, 524 P.2d 536 (1974). So here. The general definition of negligence, coupled with the specific statutory duties applicable to the case, should be sufficient.

To go further may be inappropriate, but not necessarily error. However, if the extra instructions unduly emphasize one view over another, or become argumentative, or lead into comment upon the evidence, the excess may constitute reversible error. The critical concern is whether or not the instructions mislead the jury or prejudice either party. *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 827 P.2d 656 (1992). Here, the instruction contains reference to an automobile as a "dangerous instrumentality," capable of inflicting "fatal injuries," with the driver maintained in "comparative safety." None of these references have anything to do with the facts of the instant case, or with any theory offered by the plaintiff. The references do constitute comments upon evidence, which is exacerbated because evidence—at least of fatal injuries—did not exist. We conclude that the overall impact thereby pushes this instruction into the category of the prejudicial and inflammatory.

### C. Sunlight Instruction

■ The appellants claim error in the giving of instruction 20, which reads as follows:

You are instructed that it is the law in Idaho that when defendant's vision is obstructed by bright sunlight, defendant is required to use a greater degree of diligence and caution while operating a motor vehicle than is required if defendant's vision is not obstructed.

This instruction was extracted from *Elliot v. Lee*, 71 Idaho 242, 229 P.2d 1000 (1951), a case where the defendant admitted having been blinded by the sun. In this case, there is little evidence that sunlight was a factor at all, and that evidence is conflicting. While the defendant driver testified that the sunlight did not affect her at all, the plaintiff claimed that it might have been a factor based upon a statement given by her at the scene. With this conflict in the testimony, the instruction as worded becomes a comment upon the evidence. Although we do not believe the instruction is necessary at all, if it is to be given, it should be couched in neutral terms to clearly state that the predicate finding is for the jury. (Using phraseology such as "if you find that the driver's vision was obstructed by bright sunlight, you are instructed ...," for example.) However, on the facts presented and for the reasons detailed in part B above, we do not believe the instruction is needed at all.

### D. Statutory Duties

■ The trial court outlined the statutory duties imposed upon motorists and pedestrians, and as requested by both parties. There were two significant differences, however, which give rise to a problem. In presenting the statutory duties imposed upon motorists, the court stated each applicable statute separately, within its own instruction. In presenting the statutory duties imposed upon pedestrians, however, the court listed the applicable statutes within a single instruction.

Further, in presenting the statutory duties of the pedestrian, the court added the exculpatory language suggested by IDJI 211:

A violation of one or more of these statutes is negligence, unless (1) compliance with the statute was impossible; or (2) something over which the Plaintiff had no control placed her in a position of violation of the statute; or (3) an emergency existed which was not of the Plaintiff's own making caused her to fail to obey the statute. (Instruction No. 19)

This exculpatory language was not included in any of the statutory duty instructions pertaining to the defendant motorist's duties.

We think these inconsistencies are improper. We believe it skews the emphasis to present one party's duties in a series of separate instructions while the other side's duties are lumped together in a single instruction. "Repetition of instructions is improper if its effect is to give undue prominence or emphasis to a particular theory or view." *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 827 P.2d 656 (1992). Further, if the exculpatory language is to be included generally on the statutory duties applicable to one side, it should be included generally on the statutory duties for both sides.

### E. Theory of the Case Instruction

■ The appellants next contend that the court erred in failing to give a requested instruction based on I.C. § 49–704(1), which provides:

Every pedestrian crossing the highway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the highway.

■ The defense is entitled to an instruction on every theory of the case which is supported by evidence. *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.*, 112 Idaho 722, 735 P.2d 1033 (1987); *Sulik v. Central Valley Farms, Inc.*, 95 Idaho 826, 521 P.2d 144 (1974). Here, there was some evidence that the plaintiff

may have entered the intersection from a point outside the crosswalk, giving rise to the breach of duty codified by the statute. The jury could have found this to have had some bearing upon the defendant's opportunity to observe or her time to react, either or both of which could have been relevant to the question of the proximate cause of the accident. *Smith v. Praegitzer*, 113 Idaho 887, 749 P.2d 1012 (Ct.App.), *rev. denied*, 116 Idaho 467, 776 P.2d 829 (1988). It was therefore error to fail to give the requested instruction on point.

### II. Erroneous Evidence

■ The plaintiff was a student at the time of the accident, studying to be a medical technician. She offered evidence through a witness, Dennis Merrill, that she would experience a future wage loss of $9.00 per hour as a result of injuries suffered in the accident, and claimed that this loss would continue throughout her working life. Merrill was employed as a medical technician at the local hospital, and was a member of the teaching faculty at plaintiff's school. He was not involved in hospital administration, was not involved in the direct supervision of the plaintiff either in her employment or in her schooling, and testified that he could only guess as to what the salaries at the local hospital were as compared to what an ultrasound technician could make throughout the country. He offered no explanation of how he knew what salaries were for technicians throughout the country. Although the trial judge noted the lack of foundation, he allowed the testimony over objection and upon plaintiff's counsel's representation that the foundation subsequently would be established through other testimony. This foundation never was laid, and although defense counsel later moved to strike Merrill's conclusions, the motion was denied without comment.

■ Damages for lost earnings in the future must be shown with reasonable certainty and compensatory awards based

**560**

upon speculation and conjecture should not be allowed. *Moeller v. Harshbarger*, 118 Idaho 92, 794 P.2d 1148 (Ct.App.1990), *citing Patino v. Grigg and Anderson Farms*, 97 Idaho 251, 542 P.2d 1170 (1975) and *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979). Admission of the testimony of future wage loss, upon the foundation offered, was error.

### III. Erroneous Judgment

■ The driver's parents, John and Wendy Furniss, were included as defendants because the vehicle belonged to them. There were no allegations or proof that the parents were directly involved in the accident, or that they were separately liable to the plaintiff upon any independent theory of negligence. As such, their liability to plaintiff would be that imputed under I.C. § 49–2417(2), which is limited as provided in I.C. § 49–117(16). The judgment ultimately entered in this matter did not differentiate between the amount chargeable against Malorie Furniss and the amounts chargeable her parents as the owners and permissive grantees of the use of the vehicle.

The plaintiff contends that the parents waived any objection to the form of judgment by not pleading the limitations on imputed liability as an affirmative defense. However, it is not for the defendant to plead the limitation, it is for the plaintiff to prove the entitlement. If the plaintiff is entitled to recover from these defendants under this theory, all that is available is the amount provided under the statute, regardless of how it is pleaded.

If, after retrial, a judgment is to be entered against the parents under I.C. § 49–2417(2), the judgment should appropriately reflect the limitation on the parents' individual liability.

### IV. Conclusion

The errors in instructions and admission of evidence on damages require a retrial of all issues. Accordingly, the judgment is vacated and the case is remanded for further proceedings consistent with this opinion. Disposition of the case in this fashion renders further discussion of other issues raised by the appellants unnecessary. Costs on appeal are are awarded to the appellants, but no attorney fees.

WALTERS, C.J., and SWANSTROM, J., concur.